QUARANTA ET AL., D.B.A. CAVE LOUNGE, APPELLANTS, *v.* LIQUOR CONTROL COMMISSION, APPELLEE.

(No. 83 C.A. 99—Decided November 8, 1983.)

*John A. Connor II,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James M. Guthrie,* for appellee.

Cox, J. This is a properly perfected appeal from an order of the Common Pleas Court of Mahoning County affirming an order of the Liquor Control Commission. The appeal, pursuant to R.C. 119.12, involved a rejection by the Department of Liquor Control of an application for renewal of D-1, D-2, D-3 and D-3A liquor permits. This matter was heard before the Liquor Control Commission and the commission subsequently issued an order upholding the rejection based on environmental conditions.

This matter originally arose before the commission pursuant to the appeal from the rejection of the application for the renewal of liquor licenses. The application was rejected by the Department of Liquor Control on the basis of objections by the Youngstown City Council.

The resolution of city council stated:

"That on March 10, 1979, your agent and/or employee, Gerald R. Quaranta, did allow to be removed from the permit premises, intoxicating liquor, to-wit, malt liquor, which was sold for on-premises consumption—in violation of Section 4301.21 of the Ohio Revised Code;

"2. That on April 16, 1979, your agent and/or employee Frank Guy Applegate, did sell in and upon the permit premises, intoxicating liquor, to-wit, malt liquor, to Carl J. Kesler, who was then and there under twenty-one (21) years of age; — in violation of Section 4301.69 of the Ohio Revised Code;

"3. That on April 6, 1979, your agent and/or employee Frank Guy Applegate, did furnish in and upon the permit premises, intoxicating liquor, to-wit, Carl J. Kesler, who was then and there under twenty-one (21) years of age — in violation of Section 4301.69 of the Ohio Revised Code."

This resolution was sponsored by then Councilman Robert Spencer as to complaints relating to the conditions existing at the Cave Lounge. The geographical area in which the permit is located (the Cave Lounge) encompasses

a total of three bars all closely located to each other. Testifying at the hearing were Spencer, who stated that the entire area precipitates major crime, and Joseph Deljuidice, an adjoining property owner, who testified as to complaints he had received from his tenants.

Exhibits 1 through 16 (photographs of the general area) show that the Cave Lounge is situated on a very busy commercial street, and is one of many businesses. It is not a residential neighborhood.

The issues presented by the appellants in this matter are:

"I. Whether there was sufficient evidence to support the resolution passed by Youngstown City Council thereby rendering it in accordance with law.

"II. Whether the approval of the City Law Director accompanied the City Council Resolution in order to comply with the mandates of Section 4303.271 (B), Revised Code.

"III. Whether the objection of the Youngstown City Council was properly presented at the hearing before the department in accordance with Section 4303.292(A), Revised Code."

The assignment of error reads:

"The Court of Common Pleas, Mahoning County, Ohio, erred in holding that the decision of the Ohio Liquor Control Commission was supported by reliable, probative and substantial evidence and was in accordance with law in the following respects:

"(A) The resolution which the Youngstown City Council passed is not supported by substantial evidence nor is it in accordance with law.

"(B) The City Law Director did not comply with Section 4303.271(B), Revised Code, since his approval did not accompany the City Council Resolution.

"(C) At the hearing conducted by the Department, no evidence was considered which may properly constitute the basis for an objection pursuant to Section 4303.292(A) Revised Code."

The resolution of city council was specific in detail as to date and time and persons involved, and was in accordance with the law. Further, that although the letter of the law director is dated August 10, 1979, and the resolution is dated August 21, 1979, and letter predating the resolution by some eleven days, they were both filed with the Department of Liquor Control and time stamped the same date. This is sufficient to technically comply with R.C. 4303.271(B).

Paragraph C of the assignment of error, that at the hearing conducted by the department, no evidence was considered which may properly constitute the basis for an objection pursuant to R.C. 4303.292(A), is more troublesome.

R.C. 4303.292 states in pertinent part:

"(A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:

"(1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten per cent or more of its capital stock:
"* * *

"(b) Has operated his liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
"* * *

"(d) Is in the habit of using alcoholic beverages or dangerous drugs to excess, or is addicted to the use of narcotics."

R.C. 4303.271(B) states:

"* * * Only the reasons for refusal contained in division (A) of section 4303.292 of the Revised Code and specified in the resolution of objection shall be considered at the hearing."

The entire record of testimony and exhibits before the Liquor Control Commission, the witnesses being Robert

Spencer, Joseph Deljuidice, Phillip Raybuck, Jerry Quaranta and Leander Quaranta, in no way established that the owners were users of alcoholic beverages or dangerous drugs in excess. So, therefore, subdivision (1)(d) of R.C. 4303.292(A) was not met.

The commission then only had before it the question of whether or not the liquor permit business was operated in a manner that demonstrated a disregard for laws, regulations, or local ordinances of this state. That testimony capsulized is as follows:

Councilman Spencer testified that he had received numerous complaints from people in the neighborhood concerning rowdy conduct *outside the premises;* that he observed personally rowdy behavior, loitering, and drinking *outside the premises;* and that "No Parking" and "Tow Away Zone" signs placed in front of the premises were torn down. He further testified that the motorcycle gangs which hung out at the Cave Lounge and the problems inherent with these gangs occurred *outside the premises.*

According to provisions of R.C. 119.12, there are but two questions for the reviewing court's consideration on appeal:

1. Is the order of the Liquor Control Commission supported by reliable, probative and substantial evidence?

2. Is the order of the Liquor Control Commission in accordance with the law?

Under the rules and regulations of the Liquor Control Commission, LCc-1-12(B) (now Ohio Adm. Code 4301:1-1-12[B]) provides in part:

"In determining whether to grant or refuse a permit the Department shall consider environmental factors affecting the maintenance of public decency, sobriety, and good order, * * *."

This regulation refers directly to R.C. 4303.292(A)(1)(b) which mandates that the commission must refuse a permit if it finds that the permit holder has demonstrated a disregard for laws, regulations or local ordinances. The genesis of the complaint which originated the hearing was the resolution passed by city council. That resolution was specific in alleging three instances of violation: one of consumption off-premises and two of sale to someone under twenty-one by the permit holder.

Are those allegations supported by the evidence and, if supported, are they sufficient to allow the Liquor Control Commission to refuse to renew the permits? Testimony is that these were the only violations in fifteen years of doing business at this location. Further testimony is that the permit holder was charged with these violations by the commission which took action under its enforcement powers. The evidence adduced at the hearing before the commission shows that the overwhelming majority of the testimony had nothing to do with the allegations of violation contained in the resolution of city council, and that the testimony of swearing, fighting among lounge customers, motorcycles outside the lounge, and the other matters all occurred outside the direct control of the permit holder or his agents.

Because a motorcycle gang decides to make a liquor establishment their "watering spot," does not show a permit holder's disregard for the law. It may be said "tongue in cheek" that a motorcycle gang has a detrimental environmental effect on the rest of the society in the immediate area but it certainly is not the fault of a permit holder.

Testimony at the hearing indicates that the police personally attempted to disperse the crowds outside the lounge and wrote tickets for misdemeanors, and that within an hour the same situation recurred. If the police department, with all of its powers and authority, was unable to control the situation, then how can the burden be placed on the permit holder to control the situation?

What practical effect would there be in failing to renew the permit holder's license? Would that mean that the motorcycle gang would stop drinking or that they would merely move to another place? The permit holder certainly had no right to deny entrance or service to anyone not intoxicated. The environmental conditions referred to in the regulations as they in turn refer to R.C. 4303.292(A)(1)(b) must demonstrate that the permit holder by his actions disregarded local laws, if the commission is to refuse the permit.

The appellee argues that the commission must decide under its "good cause" requirement that the circumstances of misconduct alleged in the resolution of city council are only part of the conduct that must be considered, that the department must look at the operation in a cumulative sense and its decision is not to turn upon the proof of a particular set of facts relating to a violation but it is to be determined "in the light of business operation under the permit by the holder and in the light of ever changing circumstances relating to the propriety of such renewal." This philosophy, as expressed by the appellee, far exceeds the authority granted to it by the statute. We do not disagree with the reasoning of *Draught House of Columbus* v. *Liquor Control Comm.* (1970), Franklin Cty. C.P. No. 237, 598, unreported; *Strohm* v. *Bd. of Liquor Control* (App. 1950), 57 Ohio Law Abs. 378; *Strechler, Inc.* v. *Dept. of Liquor Control* (1965), Franklin Cty. C.P. No. 219,124, unreported, all of which support the position that the permit holder can be held responsible for actions of his patrons, but there must be a direct connection between the permit holder's actions and the subsequent actions of his patrons. If the testimony were, and it is not, that the patrons became highly intoxicated at the permit holder's premises and then upon leaving went on a rampage destroying property, trespassing, using obscene or indecent conduct, we might have a different result. However, those are not the facts as presented at the hearing. This group, which at the time were using the permit holder's place of business as their "hang out," acted in an anti-social way strictly on their own. They did not need any support or help by the permit holder's agents.

R.C. 119.12 charges that the reviewing court must find that the order of the Liquor Control Commission is in accordance with law. The commission exceeded its authority in this case.

Therefore, the finding of the common pleas court in affirming the decision of the Department of Liquor Control is reversed. The cause is remanded to the trial court for further proceedings according to law and not inconsistent with this opinion.

*Judgment reversed and*
*cause remanded.*

O'NEILL and DONOFRIO, JJ., concur.