OPINION
{¶ 1} Appellant, Keydon Management Company, Inc. ("Keydon"), appeals from the judgment of the Franklin County Court of Common Pleas, which affirmed the decision of the Ohio Liquor Control Commission ("commission"), which denied the renewal of Keydon's liquor permit. *Page 2 
 {¶ 2} In May 2007, Keydon applied for 2007-2008 renewal of its liquor permits for its business on Main Street in Dayton, Ohio. The Ohio Department of Commerce, Division of Liquor Control (the "division"), denied the request for renewal. Keydon appealed that denial to the commission, and the commission affirmed the denial. Keydon then appealed to the trial court, which affirmed the commission's order.
 {¶ 3} Keydon filed a timely appeal to this court and raises the following assignment of error:
 THE FRANKLIN COUNTY COMMON PLEAS COURT ERRED BY AFFIRMING THE ORDER OF THE [COMMISSION] AND FINDING THAT THE ORDER OF THE [COMMISSION] WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE. THE DECISION OF THE [COMMISSION] WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
 {¶ 4} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnativ. Conrad (1980), 63 Ohio St.2d 108, 111.
 {¶ 5} The Ohio Supreme Court has defined reliable, probative, and substantial evidence as follows:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. *Page 3 
Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571 (footnotes omitted).
 {¶ 6} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village School Dist. Bd.of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. On the question whether the commission's order was in accordance with the law, however, this court's review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339, 343.
 {¶ 7} R.C. 4303.271(A) provides that the division "shall renew the permit" unless it "rejects for good cause any renewal application." The division must prove good cause by a preponderance of the evidence.Aysar, Inc. v. Ohio Liquor Control Comm., 10th Dist. No. 06AP-958,2007-Ohio-1470, ¶ 21.
 {¶ 8} Here, the division cited two reasons for denying Keydon's renewal application. First, citing R.C. 4303.292(A)(2)(c), the division found that the permit premises "is so located with respect to the neighborhood that substantial interference *Page 4 
with public decency, sobriety, peace, or good order would result from the renewal of the permit and operation" of the premises by the applicant. Second, citing R.C. 4303.292(A)(1)(b), the division found that the business had "been operated in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state by the applicant." The commission agreed.
 {¶ 9} Before the commission, Detective Mozier testified that, between January 1, 2006 and December 12, 2007, Dayton police officers were dispatched to the premises about 250 times. There were 58 crime reports taken, and Mozier read every one of them. Those reports included charges for felonious assault inside the bar, disorderly conduct, improper handling of a firearm, illegal drug possession, armed robbery in the parking lot, and failure to comply with an officer's order. Detective St. Clair testified concerning gang activity and underage drinking at the premises. He said that department policy provided that four officers would respond to every call from the bar. Witnesses from the neighborhood testified about the impact of the premises. They testified about the presence of trash, noise, gunfire, and prostitution in the neighborhood, and their concern for personal safety.
 {¶ 10} In its brief, Keydon argues that the owners did all they could to control its patrons and to resolve any problems that were created. Keydon notes the absence of any evidence indicating that any of the reported activity was a direct result of any action by the permit holder, its agents or its employees. In support, Keydon offersMarwan, Inc. v. Ohio Liquor Control Comm. (1994), 93 Ohio App.3d 229, and Quaranta v. Liquor Control Comm. (1983), 17 Ohio App.3d 156. *Page 5 
 {¶ 11} In Marwan, the Eighth District Court of Appeals concluded that evidence of past minor violations did not show a current disregard for law under R.C. 4303.292(A)(1)(b), particularly when some of those violations occurred before the permit holder owned the premises, and the permit had since been renewed. In contrast, here, the testimony concerned a substantial number of legal infractions and disturbances that occurred over the preceding two years.
 {¶ 12} In Quaranta, the Seventh District Court of Appeals concluded, in part, that the presence of motorcycle gangs did not, alone, support denial of a permit, where no fault was attributed to the permit holder. Here, however, there was evidence that linked the actions of the permit holder with those of its patrons. For example, Detective Mozier testified that the business "draws a certain type of crowd, and that's where we have problems." (Tr. 18.) When patrons are leaving the premises, problems occur and multiple police cruisers have to respond. "[T]he whole district ends up being tied up down there." (Tr. 18.)
 {¶ 13} Detective Mozier acknowledged that security exists on the premises. "They're trying to do their job. But what they draw there is the big issue. He brings in people. He brings in rap people. He brings in clientele. And it causes all these people to get together, and then we have our problems. Then we have our shootings. Then we have people just assaulting each other for no reason." (Tr. 23.) Detective St. Clair testified that Keydon brought in DJs affiliated with a national gang, whose members also frequent the premises. Concern for potential gang activity caused Dayton police to have six cruisers at the premises for the performance. Thus, in contrast to Quaranta, *Page 6 
the evidence in this case showed a direct correlation between the permit holder and the premises, on the one hand, and the interference with the neighborhood, the police response, and the illegal activity, on the other.
 {¶ 14} In the end, our review of the record leads us to conclude that the trial court did not abuse its discretion in determining that reliable, probative, and substantial evidence supported the commission's order affirming the denial of the permit renewals.
 {¶ 15} Keydon also argues that the commission failed to admit certain evidence. Specifically, Keydon argues that the commission failed to admit Exhibits D-1, D-2, E, F, and G, which include police dispatches and reports. The record, however, indicates their admission.
 {¶ 16} At the conclusion of the witness testimony, the division's counsel moved for admission of Exhibit D-1. The chairman asked if there was any objection, and Keydon's counsel responded, "None." (Tr. 134.) As for Exhibit D-2, Keydon's counsel said, "No objection." (Tr. 134.) The chairman then asked about Exhibits E, F, and G, and for each, Keydon's counsel indicated no objection. Following discussion of all the exhibits, Keydon's counsel said, "No objection to any of them." (Tr. 137.) While the record does not contain a clear statement of admission by the chairman, the counsel and the chairman expressly reviewed each separate exhibit for purposes of admitting each one, and Keydon's counsel indicated his acquiescence. We conclude, then, that the trial court did not err in determining that "a fair reading in context demonstrates" that the division's motion for admission of the exhibits "was both unopposed and understandably granted." *Page 7 
 {¶ 17} For all these reasons, we overrule Keydon's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGRATH and TYACK, JJ., concur. *Page 1