BUCKEYE BAR, INC., APPELLANT, *v.* LIQUOR CONTROL COMM., APPELLEE.

(No. 71-423—Decided April 11, 1972.)

*Mr. Alan C. Travis,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. John A. Connor II,* for appellee.

TROOP, P. J. The department of liquor control, under date of January 29, 1971, rejected an application for the renewal of the D-1, D-2, D-3, and D-3a permits of the Buckeye Bar, Inc., doing business as Walk Inn. Attention is directed to page two of the department's communication, titled A through H inclusive, listing the specific reasons for its denial of the permit, which reasons are essentially a reflection of the environmental effects of the presence of the permit premises. Also appearing in the communica-

tion are reasons A through C inclusive, which reflect police department objections.

The decision of the department was before the liquor control commission for review, and its decision, mailed May 11, 1971, affirmed the department's rejection of the application for renewal. The decision of the commission was appealed according to statute to the Common Pleas Court of Franklin County, which, on November 2, 1971, filed a journal entry affirming the order of the liquor control commission, finding that such order was supported by reliable, probative, and substantial evidence and was in accordance with law. It is from that judgment and final order of the Common Pleas Court that this appeal is taken.

According to R. C. 4303.271, a permit holder is entitled to a renewal of his permit or permits unless such is rejected by the department "for good cause." It is clear that the burden of proof is on the board to show that the permit holder has no right to a renewal. (*City Club of Toledo, Inc.*, v. *Bd. of Liquor Control* [1964], 3 Ohio App. 2d 339.) There is little available material to indicate just what is meant by "good cause." The department's regulation 12 seems to suggest that the concept embraces a situation where "no substantial prejudice to public decency, sobriety and good order will result." If the department finds such a condition to exist, a permit will issue.

Plaintiff addresses his single assignment of error to the claim that the Common Pleas Court was in error in finding that reliable, probative, and substantial evidence supported the order of the department and its affirmation by the commission. Careful and specific definition of those three terms escapes the attention of this court. Something of a negative approach is taken by the Supreme Court in its decision in *Corwin d. b. a. C. & O. Restaurant* v. *Bd. of Liquor Control* (1960), 170 Ohio St. 304, in which the court speaks of a "naked objection." That kind of an objection, said the court in the third paragraph of the syllabus, "does not, of itself, constitute reliable, probative or substantial evidence to support the denial of the permit." This

negative thought at least produces one clue or measure for the evidence adduced in a case such as the one before us.

One other basic rule should be noticed, which is set out in the decision in *Sanders* v. *Fleckner* (1950), 59 Ohio Law Abs. 135, which reminds us that liquor cases heard before any tribunal are civil cases; consequently, the rule of "preponderance" is applicable and there never is an occasion which requires proof beyond a reasonable doubt.

Counsel for the plaintiff in both brief and oral argument centers his attention on the qualifying term "substantial," indicating that he raises no objection as to the reliability or the probative value of the evidence adduced at the hearing. Thus, limiting our consideration to the one term, "substantial" raises a question as to whether counsel is in fact arguing anything more than the weight of the evidence. Certainly the term "substantial" cannot be disassociated from the term "credible." Common dictionary definition and usage suggest that "substantial" means evidence having value. It is real, true, solid, firm, soundly based, or carries weight. Volume 40, Words and Phrases (1964), at page 781, produces some suggestions of value. It is suggested in one note that the term "substantial" when used in connection with evidence on an appeal from an administrative agency means "reasonable support." A cursory review of some of the other suggestions indicates that, ordinarily, evidence is substantial if it tips the scales in favor of the party on whom the burden of proof rests. It is also suggested that substantial evidence is evidence that will convince an unprejudiced mind of the truth of the fact to which the evidence is directed. In more simple language, counsel is talking about weight and credibility which normally are for the trier of the facts.

An examination of the record and transcript in the instant case would indicate that the concern of the liquor department in rejecting this permit centered about what we have chosen to call "environmental" conditions. That such is an appropriate thesis upon which the liquor department may decide the matter of issuing a permit is in-

dicated by this court's decision in the case of *In re Appeal of Mendlowitz* (1967), 9 Ohio App. 2d 83, as set out in paragraph 3 of the syllabus of that decision, which reads as follows:

"Environmental conditions relating to public decency, sobriety, and good order may, where those conditions are extreme enough, constitute 'good cause' to reject a renewal application under Section 4303.271, Revised Code, regardless of the permit holder's personal fitness or satisfactory business operations."

This court faced essentially the same problem as is presented in the case presently under consideration in the unpublished case of *Samaritan Lounge Bar, Inc., d. b. a. Adele's Lounge Bar,* v. *Liquor Control Commission,* No. 9497, issued November 18, 1969. In that decision, this court called attention to the decision in the *Mendlowitz* case, *supra,* and also to a decision by this court in *Department of Liquor Control* v. *Milenkovich, d. b. a. Winton Grill* (1959), 83 Ohio Law Abs. 292. The headnotes in the *Milenkovich* case reflect the holdings set out in the decision. Paragraph 1 reads as follows:

"The Director of Liquor Control is charged with regulating the liquor business and to see to it that those licensed to conduct such business live up to the standards required by the rules of the department legally adopted and the liquor act in general, requiring licensees to support the maintenance of public decency, sobriety, and good order in the conduct of such business."

No attempt is made to summarize the evidence presented at the hearing before the commission, but, after having reviewed it carefully, it is concluded that the reissuing of the permits herein would substantially affect and prejudice public decency, sobriety, and good order.

It is noted that the Cleveland councilman, Lawrence W. Duggan, representing the ward in which the permit premises are located, received and presented to the city council a petition objecting to the permit premises signed by 73 of his constituents. Three of those constituents who had signed the petition appeared at the hearing be-

fore the liquor commission. Mr. J. L. Hasenflug, president of the community civic club, who lives within one block of the bar, said that there was a rumpus there all the time and he once observed two patrol cars at the bar on "last Friday," about 3:40 a. m. Another citizen, Joseph Tarach, who has youngsters, and lives diagonally across from the bar, testified that on numerous occasions the street and traffic lights were shot out in the vicinity of the bar by people who sat on its steps, that go-go girls were on the street, that beer bottles were strewn over the neighborhood, and that he saw on several occasions patrons of the grill urinating in the parking lot adjoining the bar.

A man who lived next door to the bar, Emmert B. Fisher, who has three children who are minors, verified the testimony concerning the street and traffic lights, and testified that fights start inside the bar and then the participants come to the outside to finish the fight. He was specific in this case saying that a fight took place on a Sunday, in the morning, about 4 a. m., in which females were the participants. As a next-door neighbor, he testified that he was in a position to see what went on in the parking lot and that at least on ten occasions he saw patrons of the bar urinate in the lot, and on one occasion saw a guy crawl into his truck with no pants on in the presence of his 19-year-old stepdaughter.

Police Officer Michael Sinunzio testified on behalf of the police department which, he reported, objected to the renewal of the permits. The objection of the police department was predicated upon the high crime rate in what the officer described as the "census tract" in which the permit premises were located. He reported 132 major crimes in that area during 1970. While there was no special check made of the serious felonies as directly related to that location, it was reported that a bar employee had a short time before been killed on this particular permit premises. The testimony of the officer did not particularly relate to the operation of the bar, but what he did report to the commission related to the general environment with which the police department had to deal, and in that sense escapes

the classification of the evidence being "naked objection."

As previously stated, weight and credibility are for the trier of the facts. It is not the function of a reviewing court to weigh evidence, and most assuredly it is not within the province of the reviewer to determine credibility when he has had no opportunity to see or hear the witness. The evidence reviewed is sufficient to support the conclusion of the department and the liquor control commission and justifies the conclusion reached by the Common Pleas Court that the evidence was reliable, probative, and substantial.

The authorities cited indicate that the conclusion of the Common Pleas Court is also according to law. As this court said in its decision in the *Samaritan Lounge Bar* case, at page 5: "The right of the appellant herein to continue to sell intoxicating liquors must yield to the more basic right of the public, acting through the director of the department of liquor control to eliminate a condition which prejudices public decency, sobriety and good order."

The judgment of the Common Pleas Court affirming the order of the Liquor Control Commission is affirmed.

*Judgment affirmed.*

HOLMES and WHITESIDE, JJ., concur.