MARWAN, INC., Appellant,

v.

OHIO LIQUOR CONTROL COMMISSION, Appellee.

[Cite as *Marwan, Inc. v. Ohio Liquor Control Comm.* (1994), 93 Ohio App.3d 229.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64613.

Decided Feb. 22, 1994.

230

*Ross F. Sprague*, for appellant.

*Lee Fisher*, Attorney General, and *James M. Guthrie*, Assistant Attorney General, for appellee.

PORTER, Judge.

Appellant Marwan, Inc. appeals pursuant to R.C. 119.12 from the judgment of the Common Pleas Court of Cuyahoga County affirming an order of the Ohio Liquor Control Commission upholding the order of the Ohio Department of Liquor Control which denied the appellant a 1990–1991 renewal of C–2 and C–2X permits to conduct a carry-out liquor business at 3918 East 140th Street in Cleveland, Ohio. Appellant basically contends that the evidence was insufficient to support the lower court's affirmance of the commission's grounds for denying the renewal. For the reasons hereinafter stated, we find that the appeal has merit, reverse the judgment below and remand to the lower court for further proceedings.

In 1986, appellant acquired the C–2 and C–2X liquor permits for beer and wine carry-out along with the business of a going concern at 3918 East 140th Street in Cleveland. The stock of appellant was one-hundred-percent owned by Marwan Kash. Appellant's permit was renewed annually until appellant filed for 1990–1991 renewal prior to the deadline of October 30, 1990.

Prior to the last filing date, a stock transfer request was filed with the department in March 1989 to obtain permission to transfer appellant's capital stock to one Ahmad Saleh, who was managing the business pursuant to a management agreement with appellant. On March 13, 1990, the department denied the stock transfer request to Saleh on various grounds which reflected on his fitness to operate a liquor establishment. No appeal was taken from the department's order. The management agreement with Saleh was terminated.

After appellant filed for the 1990–1991 renewal, it entered into a new management agreement with one Said Eadeh, dated January 2, 1991, which apparently was in effect while the 1990–1991 renewal application was pending.

Following a renewal investigation, the department entered an order, dated March 27, 1991, denying appellant's renewal application "for good cause based upon the following grounds and facts":

"1) Applicant has misrepresented the legal or beneficial interests held by third parties in the captioned business on the 1990–1991 renewal application. R.C. 4303.292(A)(1)(c) and R.C. 4303.293(A).

"2) Applicant has operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. 4303.292(A)(1)(b).

"3) Applicant is not the owner or operator of the business at the captioned location carrying on the business specified by the captioned carryout permit. R.C. 4303.12, R.C. 4303.121, R.C. 4303.293(A), and R.C. 4303.27.

"4) Applicant has transferred, sold, or assigned the captioned business to one Ahmad Saleh in violation of a valid and specific Department of Liquor Control Order denying such consent. R.C. 4303.29(A), R.C. 4303.27, R.C. 119.06, and O.A.C. 4301:1–1–14(D).

"On March 13, 1990 the Department issued an Adjudication Order denying a Stock Transfer Consent Application whereby Ahmad Saleh sought the consent of the Department in the acquisition of all issued stock in the corporation from Marwan Kash. No appeal was taken from the Order of the Department. The Order of the Department is identified as Exhibit I and incorporated by reference into the present Order and fully rewritten herein. The Department notes that the August 10, 1989 citation identified in the Order as pending resulted in a four (4) day suspension by the Liquor Control Commission.

"On the 1990–1991 renewal application, Marwan Kash declared that no other person had a legal or beneficial interest in the permit business. An investigation conducted by the Department on October 30, 1990 revealed that Mr. Marwan Kash has no interest in the captioned business, which he stated was sold to Ahmad Saleh."

On appeal to the commission, an evidentiary hearing was held on July 23, 1991. On October 29, 1991, the commission affirmed the department's denial of the renewal, by a two-to-one vote with the chairman dissenting.

The appellant filed an appeal from the commission ruling with the Common Pleas Court of Cuyahoga County on November 12, 1991. Following submission of the record before the commission and further briefing, the common pleas court affirmed the commission's decision on October 8, 1992. The instant appeal timely ensued.

Appellant's single assignment of error states that "the Court of Common Pleas erred in upholding the decision of the State Liquor Control Commission denying the renewal of appellant's liquor permit." Appellant addresses three issues that bear on its assignment of error. We will treat them in the order asserted.

■ The standard of review which governs administrative appeals under R.C. 119.12 is whether the commission's order denying renewal is supported by reliable, probative and substantial evidence and is in accordance with law. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303, 1305; *Insight Enterprises, Inc. v. Ohio Liquor Control Comm.* (1993), 87 Ohio App.3d 692, 696, 622 N.E.2d 1145, 1147. The Supreme Court has further defined the quality of the required evidence as follows:

"The evidence required by R.C. 119.12 can be defined as follows: (1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2)

'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." *Our Place, supra,* 63 Ohio St.3d at 571, 589 N.E.2d at 1305.

A person acquiring a liquor permit under the Ohio Liquor Control Act (R.C. Chapter 4303) does not retain the permit indefinitely but must seek renewal annually. R.C. 4303.27. The Act further provides:

"[T]he holder of a permit * * * who files an application for renewal of the same class of permit for the same premises shall be entitled to the renewal of the permit. The department of liquor control shall renew the permit unless the department rejects for good cause any renewal application * * *." R.C. 4303.-271.

As the state points out, there are "two primary laws which set forth the criteria for rejection of a license renewal and the satisfaction of the 'good cause' requirement for such rejection." (Appellee's Brief at 6.) Thus, R.C. 4303.292 provides in pertinent part:

"(A) The department of liquor control may refuse to * * * renew * * * any retail permit issued under this chapter if it finds:

"(1) That the applicant, any partner, member, officer, director, or manager thereof, or any shareholder owning ten per cent or more of its capital stock:
" * * *

"(b) Has operated his liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;

"(c) Has misrepresented a material fact in applying to the department for a permit;
" * * *

"(2) That the place for which the permit is sought:

"(c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace and good order would result from the * * * renewal * * * of the permit and operation thereunder by the applicant."

The burden is on the department to prove good cause for its renewal rejection by the preponderance of the evidence. *Buckeye Bar v. Liquor Control Comm.* (1972), 32 Ohio App.2d 89, 90, 61 O.O.2d 90, 91, 288 N.E.2d 318, 320; *In re Appeal of Mendlowitz* (1967), 9 Ohio App.2d 83, 86, 38 O.O.2d 77, 79, 222 N.E.2d 835, 838; *Zan, Inc. v. Ohio Liquor Control Comm.* (June 14, 1979), Cuyahoga App. No. 39024, unreported.

The state's position in the case *sub judice* is well summarized by the conclusion:

"The evidence to support the Department's 'good cause' rejection lies not so much in one clearly identifiable point, but in the cumulative effect of adverse environmental conditions, burden on law enforcement, violations of the liquor and criminal laws, and false ownership not divulged to the Department." Appellee's Brief at 5–6.

■ Appellant first challenges the department's finding that "a rejected transferee had been permitted to operate the business." The order of the department denying the renewal of appellant's permit states four grounds on which the denial is based. The fourth ground deals with the transferee issue as follows:

"4. Applicant has transferred, sold, or assigned the captioned business to one Ahmad Saleh in violation of a valid and specific Department of Liquor Control Order denying consent to such transfer. R.C. 4303.29(A), R.C. 4303.27, R.C. 119.06, and O.A.C. 4301:1–1–14(D)."

The appellant concedes that there was a stock transfer request filed with the department to approve transfer of the stock to Ahmad Saleh, which was denied on March 13, 1990. Appellant claims that a review of the record reveals that there was absolutely no evidence introduced to substantiate the finding stated in paragraph 4.

Appellant is correct in claiming there was no testimony at the hearing resulting from the renewal investigation of October 30, 1990 to support the finding in paragraph 4. The only evidence on this score was from Kash that he retained a new manager, Ahmad Saleh, to manage the business in September 1989; that later on he entered into a purchase agreement for Saleh to buy the business; that the stock transfer request was duly filed with the department in March 1989 and denied by the department on March 13, 1990; when that happened Kash gave Saleh his money back and the business relationship terminated. There is nothing to suggest in this testimony that appellant had "transferred, sold, or assigned" the business to Saleh *"in violation of a valid and specific Department of Liquor Control Order denying consent to such transfer."* We find no evidence in the record to support the fourth finding. Quite to the contrary, the evidence supports the conclusion that when the department denied the transfer, the arrangement with Saleh was terminated, his money was returned and they parted company.

■ Appellant also contends that the department's findings that appellant was not the owner of the business were unsupported by the record.

The order of the department denying renewal of the permit stated in grounds one and three:

"1. Applicant has misrepresented the legal or beneficial interests held by third parties in the captioned business on the 1990–1991 renewal application. R.C. 4303.292(A)(1)(c) and R.C. 4303.293(A)."

"3. Applicant is not the owner or operator of the business at the captioned location carrying on the business specified by the captioned carryout permit. R.C. 4303.12, R.C. 4303.121, R.C. 4303.293(A), and R.C. 4303.27."

Paragraphs 1 and 3 above illustrate the state's contention that appellant is not the owner of the business at the licensed premises. We agree with appellant that there is no evidence in the record to support this conclusion.

Veronica Hambrig conducted the renewal investigation for the department. She testified that she went to the premises on October 30, 1990 to look at the records and determine who was paying the bills and whose name was on the lease. She was supposed to meet Marwan Kash, but he wasn't there. She met another Kash, and he did not know how to get in touch with Marwan. She testified she talked with Marwan by phone and he said he had nothing to do with the business and it was supposed to be transferred to someone else and his attorney was handling it. He said to call his attorney if she had any questions. She did not do so.

On cross-examination, she testified that the Kash at the premises told her the other Mr. [Marwan] Kash was operating the business. He had trouble speaking English and said he did not understand her. After the telephone conversation with Marwan Kash, she terminated her investigation.

Marwan Kash testified that his business relationship with Ahmad Saleh terminated once the stock transfer request was denied in March 1990. He then hired Mr. Hassam in June 1990, to take over Saleh's management position. Although Hassam was interested in buying the business, the deal never went through and Hassam left his position in December 1990.

Kash also testified that Said Eadeh did not start managing the business until January 2, 1991, when they entered into a management agreement of the same date. Marwan was identified as "Owner" and Eadeh as "Manager" in this agreement. This agreement recited that there was a purchase agreement of even date. He testified that he did not advise the department of the proposed transfer to Said Eadeh because the department had not yet renewed the 1990–1991 permit.

This evidence does not support the first and third grounds that appellant "misrepresented the legal or beneficial interests held by third parties in the

captioned business on the 1990–91 renewal application"; nor does it establish that appellant was not the "owner or operator of the business" when it filed the renewal application. The transactions with Saleh and Hassam never went through and the management agreement with Eadeh did not come into existence until after the renewal application was filed and the renewal investigation by Hambrig had terminated on November 30, 1990. The sole question before the board was whether the director as a matter of law and fact properly refused the issuance of the renewal permit. Facts developed after the director's refusal cannot be considered. *Cf. E. Toledo Social Club v. Bd. of Liquor Control* (1955), 71 Ohio Law Abs. 193, 194, 130 N.E.2d 238, 239. Even if Eadeh's involvement with the business is considered, it does not support the conclusion that Kash was not the owner of the business. The management agreement between Kash and Eadeh clearly provided that Marwan would remain the owner until Eadeh paid the purchase price and the transfer of permits was approved:

"This Management Agreement shall remain in full force and effect until the payment in full of the purchase price for the Business and the transfer of the Permits for the Permit Premises from Owner to Manager is consummated pursuant to a Purchase Agreement (hereinafter the 'Purchase Agreement') of even date herewith between the parties for the purchase of the Business by the manager from Owner." Management agreement, page 3, paragraph 3.

Kash stated at the hearing that he did not file a notice of transfer with the department, as he could not begin the transfer proceedings until the liquor license was renewed. Therefore, although Eadeh had an interest in the business, he could not become the owner, under the terms of the agreement, until the permits were transferred. As the court stated in *State v. 3481 Main, Inc.* (1981), 1 Ohio App.3d 98, 100, 1 OBR 401, 403, 439 N.E.2d 966, 968.

"By common understanding, one's having an 'interest' in a business amounts to one's having something less than 'ownership' of a business. Accordingly, even though the state, relying upon the defendant-corporation's admission, proved that the corporation had failed to list a person who had an *interest* in the business, the state did not prove that the defendant corporation failed to list a person who had *ownership* of the business. The state, then, failed to prove that the defendant corporation was guilty of an offense under R.C. 4303.293." (Emphasis *sic*; footnote deleted.)

The first and third grounds are not supported by the evidence.

The only remaining finding is contained in paragraph 2 of the department order, which states:

"(2) Applicant has operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. 4303.292(A)(1)(b)."

The order of the department denying renewal cites violations at the premises. mainly from 1979 to 1982, when the appellant was not the permit holder. The three most recent citations were two in 1988 and one in 1989, two two-day and one four-day suspension for Sunday sales. The permit was renewed in 1989 after those brief suspensions.

We believe that these minor suspensions, which were forgiven in the 1989–1990 renewal, do not provide *current* grounds for denying the 1990–1991 renewal. This result is strongly indicated by *In re Mendlowitz* (1967), 9 Ohio App.2d 83, 87, 38 O.O.2d 77, 80, 222 N.E.2d 835, 838–839:

"In the present case, the last violation was more than a year before the application, and there had been an intervening renewal. Further, the violations in this case are of the type which may be proved without necessarily involving any knowledge or even negligence by the permit holder. There is no evidence on the circumstances surrounding the violations. In one instance no penalty was imposed. In two cases the penalty was only seven days.

"Prior to the enactment of Section 4303.271, Revised Code, the department was required to act upon each renewal within a short period of time, and careful review was almost impossible. Compare *State, ex rel. Jones, v. Bryant, Dir.* (1953), 159 Ohio St. 59 [50 O.O. 55, 110 N.E.2d 912]. Under the present statute, the license no longer expires, and the department has no specific time requirement in passing upon the application. In reviewing each annual renewal, the director or his successor should not be in a position to overrule previous renewals without showing some intervening cause or at least showing grounds of which the department was unaware at the time of the previous renewal. Having granted a renewal, the department cannot use prior misconduct as a 'Sword of Damocles' over the permit holder and his investment.

"In view of the lack of any recent violation, it is our opinion that the violations proved here are too remote in time and too ambiguous in kind to support a finding that appellant was unfit to continue the operation of his business."

In the case at bar, numerous violations were cited for the years 1979 to 1982. Appellant had no interest in the permit premises until 1986 and cannot be charged with the earlier violations. The record submitted by the department showed three recent minor violations which led to one four-day and two two-day suspensions. In spite of these violations, the license was renewed in 1989. Under the decision in *Mendlowitz, supra,* good cause has not been established to substantiate paragraph 2 of the state's grounds.

Although the state now argues at length in its brief that there were environmental conditions in the neighborhood (noted in the stock transfer denial order affecting Ahmad Saleh) that would have supported a refusal to renew based on R.C. 4303.292(A)(2)(c) ("substantial interference with public decency, sobriety, peace and good order would result from" renewal), that has *not* been stated by the department as a reason for non-renewal and there is no significant evidence to support such a finding, in any event.

In order to deny a permit renewal on the grounds that a renewal would create environmental problems in the neighborhood, it must be shown that the permit holder by his actions caused the complained-of environmental problems or has demonstrated a disregard for laws, regulations or local ordinances. *Leo G. Keffalas, Inc. v. Ohio Liquor Control Comm.* (1991), 74 Ohio App.3d 650, 600 N.E.2d 275. We have already found that appellant has only incurred *minor* sanctions since taking over the premises. There is no evidence of applicant's disregard for law which contributed to the neighborhood problem. Indeed, it would appear that appellant's stewardship of the premises was a significant improvement over the prior owner's.

There is also no evidence that appellant caused the complained-of problems in the neighborhood. See *Quaranta v. Liquor Control Comm.* (1983), 17 Ohio App.3d 156, 158, 17 OBR 287, 289, 478 N.E.2d 825, 828 (a renewal would not be denied because a motorcycle gang used the premises as its "watering hole," where no fault was attributed to the permit holder). Since there was no evidence presented showing a direct connection between the neighborhood problems and appellant's sale of liquor at the store, this cannot be a basis for denying the renewal of the permit.

In summary, we find that the state has not established good cause for the non-renewal of appellant's liquor permit by reliable, probative and substantial evidence as required by law.

The judgment of the common pleas court is reversed, the order denying the renewal permit is vacated, and this cause is remanded to the lower court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HARPER, P.J., and DYKE, J., concur.