Appellant, Equus, Inc., appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of appellee, Ohio Liquor Control Commission ("commission"), denying the renewal of appellant's Class D-5 liquor permit. Appellant advances a single assignment of error:
 The Lower Court Erred When It Found That The Decision of the Liquor Control Commission Was Supported By Reliable, Probative and Substantial Evidence and Was in Accordance with Law.
The underlying facts and procedural history of this case are as follows. Since 1989, appellant has been the holder of a D-5 liquor permit[1] to operate a liquor establishment at 38 East Winter Street in Delaware, Ohio. Appellant rents the permit premises under the terms of a ten-year lease agreement executed in June 1986. Bruce Watkins is appellant's sole shareholder and president. From 1989 to early 1995, appellant operated an establishment known as the One Horse Tavern at the permit location.
In February 1995, Watkins organized and became a trustee and president of a private, nonprofit fraternal organization known as the Orioles of Delaware, Inc. ("Orioles"). On March 16, 1995, the Orioles filed an application with the Ohio Department of Liquor Control ("department") for a D-4 liquor permit[2] at 38 East Winter Street, Delaware, Ohio. Along with the application, the Orioles filed a certification of tenancy rights dated February 24, 1995, which stated that the Orioles would have tenancy rights at the permit location beginning May 1, 1995 and continuing to May 1, 1998.
In March 1995, the Delaware City Police Department conducted an investigation on behalf of the City of Delaware ("city") to determine whether the city would file an objection to the Orioles' D-4 application. During the course of the investigation, Delaware City Police Detective Mark Leatherman met with Watkins to discuss the Orioles' planned use of the facility. During this discussion, Leatherman asked Watkins whether the Orioles were planning to allow gambling at the facility. According to Leatherman, Watkins stated that there would not be any more gambling at the Orioles' club than took place at any of the other private clubs in Delaware. Leatherman reported this conversation to then Delaware City Police Chief Randall Morris, who met with Watkins on April 6, 1995. At this meeting, Morris informed Watkins that the city was planning to object to the issuance of the D-4 permit based upon the information gathered during the investigation. According to Morris, Watkins made no admission regarding the gambling issue during this discussion; however, Watkins did state that private clubs such as the Orioles often had to permit gambling in order to keep their beer prices down.
Based upon the information obtained during the investigation, the Delaware City Council, by resolution adopted April 10, 1995, objected to and requested a hearing before the department on the Orioles' application for a new D-4 liquor permit.
Upon learning of the city's objections to the Orioles' application for the D-4 permit, appellant filed an application for a renewal of its D-5 permit for permit year 1996-1997. On the application, appellant indicated that no one other than the permit holder had any legal or beneficial interest in the permit business and that appellant currently rented the premises. Along with the application, appellant filed a certification of tenancy rights, dated January 4, 1989, which stated that appellant had tenancy rights in the permit location for the period from January 1, 1989 to July 1, 1996.
In June 1995, the Delaware City Police Department began an investigation into purported gambling activities at the permit location. This investigation resulted in the issuance of a search warrant which was executed on July 14, 1995. According to the two officers who executed the search warrant, the outward appearance of the permit location resembled a private club; the windows were tinted so that activities within the premises could not be seen from the outside. The premises were not accessible to the public. Entry to the premises was limited to members via use of a key card or buzzer system. A sign posted outside the door warned members not to access the club using their key card if someone they did not recognize was nearby.
Inside the premises, the police discovered Orioles paraphernalia, a flyer announcing the grand opening of the Orioles club on July 7, 1995, a list of those who attended the grand opening, Orioles' membership applications and tip tickets. A citation was issued against appellant for possession of tip tickets and hindering or obstructing inspection of the premises. Appellant was eventually found in violation by the commission and served a five-day suspension of its liquor license.
On October 6, 1995, the department conducted a hearing on the city's objections to the Orioles' D-4 application. At the same time, the department also considered appellant's application for renewal of the D-5 permit. On February 9, 1996, the department mailed orders denying both the Orioles' D-4 application and appellant's renewal application. With regard to the D-4 application, the department found, in pertinent part, that the Orioles were in exclusive possession of the permit premises and were utilizing appellant's D-5 liquor permit to engage in the unlawful retail sale of alcoholic beverages in the ownership and operation of the Orioles' club business without the approval of the department and without being the holder of a permit that would authorize such sales. As to appellant's renewal application, the department set forth the following reasons for its rejection:
 1) The applicant does not have tenancy rights at the captioned location for purposes of carrying on the ownership and operation of a night club business. R.C. 4301.01(B)(14), R.C. 4303.18, and R.C. 4303.27.
 2) The applicant is not the owner and operator of a night club business at the captioned location engaged in the retail sale of alcoholic beverages as required by law. R.C. 4303.27, R.C. 4303.29(A), R.C. 4303.18, and R.C. 4301.01(B)(14).
 3) The applicant has allowed others not named on such permit, namely Orioles of Delaware, Inc., to carry on the business specified and engage in the retail sale of alcoholic beverages utilizing the captioned permit without consent or approval of the Department of Liquor Control and as prohibited by law. R.C. 4303.29(A), R.C. 4303.18, R.C. 4303.27, and R.C. 4301.01(B)(14).
 4) The applicant and/or Orioles of Delaware, Inc. have operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state. R.C. 4303.292(A)(1)(b).
 5) The permit holder has misrepresented material facts to the Department on the 1996-1997 renewal application. R.C. 4303.292(A)(1)(c).
For the above reasons, the department determined pursuant to R.C. 4303.271(A) that a "good cause" basis existed to deny the renewal application.
Both the Orioles and appellant timely appealed the department's rejection orders to the commission. An evidentiary hearing was held before the commission on January 15, 1997. Detective Leatherman testified on behalf of the department as to the aforementioned facts regarding both the city's initial investigation in March 1995 and the enforcement action on July 14, 1995. Both Leatherman and Terry Williams, a liquor control agent who was present during the July 14, 1995 enforcement action, opined that based upon the evidence discovered during these two investigations, the permit location was being operated by the Orioles as a private club. Williams admitted, however, that it is not impermissible to utilize a D-5 permit to operate a D-4 private club.
Also testifying on behalf of the department were Delaware City Police Sargeant Mark Drum and Delaware City Police Officer Steve Wooster. Drum stated that he did not know of any liquor establishments in the city of Delaware that utilized key cards other than private clubs. Wooster testified that in October 1995, he was invited by a friend to go to what the friend referred to as the "Orioles." The friend used a key card to gain entrance to the club.
Dave Alberts, a representative of Delmar Distributing, also testified on behalf of the department. Alberts identified two invoices, dated October 16 and 18, 1995, chronicling the delivery of approximately twenty-seven cases of beer to the permit location. Both of the invoices listed the "customer" as "Fraternal Order of Orioles." Alberts testified that he did not know whether the person who made the two deliveries made certain that the entity to whom the beer was delivered was, in fact, the permit holder. He then acknowledged that the "Fraternal Order of Orioles" could be only a "dba" ("doing business as") and not the name of the permit holder.
The final witness at the hearing was Watkins, who testified on behalf of appellant. Watkins testified that appellant was to relinquish tenancy of the permit location, and the Orioles were to take over the tenancy of the permit location on May 1, 1995, only if the department issued the D-4 permit. In addition, once the D-4 permit was issued and the Orioles were permitted to operate the facility, it was Watkins' intention to have the D-5 permit put into safekeeping.
Watkins further testified that, although appellant permitted members of the Orioles club to patronize the permit location while the Orioles' D-4 application was pending, appellant continued to operate all financial aspects of the business during 1995 and 1996. To that end, Watkins identified numerous documents including the aforementioned lease, a food service operator's license, daily sales and cash reports, sales tax filings, invoices for delivery by beer distributors, spirituous liquor orders from the department and copies of checks showing payment by appellant to the department, beer distributors (including Delmar Distributing), utility companies, attorneys, CPAs, vendors, contractors, newspapers, and the Treasurer of the state of Ohio.
Following the hearing, the commission issued an order, without opinion, affirming the department's orders denying both the Orioles' D-4 application and appellant's renewal application. Both appellant and the Orioles appealed the commission's order to the Franklin County Court of Common Pleas. The Orioles voluntarily dismissed their appeal. Appellant's appeal was briefed and by journal entry dated July 1, 1998, the common pleas court affirmed the commission's decision. This timely appeal followed.
In an administrative appeal under R.C. 119.12, the common pleas court reviews the commission's order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with law. Our Place, Inc. v. Ohio LiquorControl Comm. (1992), 63 Ohio St.3d 570, 571; Marwan, Inc. v.Ohio Liquor Control Comm. (1994), 93 Ohio App.3d 229, 232. The quality of evidence required by R.C. 119.12 is defined as follows: "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." Id. at 571.
When performing this review, the common pleas court considers the credibility of competing witnesses as well as the weight and probative character of the evidence. Andrews v. Bd. OfLiquor Control (1955), 164 Ohio St. 275, paragraph one of the syllabus. Generally, the common pleas court must defer to the commission's resolution of factual questions; however, the court need not accept improperly drawn inferences from the evidence, nor accept evidence which is neither reliable nor probative. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108,111.
Unlike the common pleas court, this court does not determine the weight of the evidence. Lorain City Bd. of Edn. v. StateEmp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. Rather, this court's standard of review is limited to determining whether the common pleas court abused its discretion in reviewing the commission's order. In other words, this court must determine whether the common pleas court abused its discretion in finding that the commission's order was supported by reliable, probative and substantial evidence. Id. at 261. An abuse of discretion implies more than a mere error of judgment; it connotes "perversity of will, passion, prejudice, partiality, or moral delinquency." Id. quoting State ex rel.Commercial Lovelace Motor Freight, Inc. v. Lancaster (1986),22 Ohio St.3d 191, 193.
A liquor license is neither a property nor a contract right, but mere permission to engage in the liquor business. TheStouffer Corp. v. Bd. of Liquor Control (1956), 165 Ohio St. 96,99. A person acquiring a liquor permit under R.C. Chapter 4303 does not retain the permit indefinitely but must file an application for renewal annually. R.C. 4303.27. Pursuant to R.C. 4303.271, a permit holder is entitled to renewal of its liquor permit unless the department rejects the renewal application for good cause. Buckeye Bar v. Liquor Control Comm.
(1972), 32 Ohio App.2d 89, 90. The department has the burden of proving, by a preponderance of the evidence, that good cause exists for rejecting a renewal application. Id. If any one of the grounds cited by the department for rejecting a renewal application is supported by reliable, probative and substantial evidence, the commission's decision must be upheld. Our Place,supra, at 572. R.C. 4303.292, which governs permit renewal, states in pertinent part, as follows:
 (A) The department of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
(1) That the applicant * * *:
* * *
 (b) Has operated his liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
* * *
 (c) Has misrepresented a material fact in applying to the department for a permit[.]
Appellant first challenges the department's finding that appellant did not have tenancy rights at the permit location at the time the renewal application was filed. The record contains a copy of a ten-year lease agreement for the premises located at 38 East Winter Street, Delaware, Ohio, which is signed by J.T. Morrison as lessor and Thomas E. Buell as lessee. Watkins testified at the hearing before the commission that the lease agreement was signed by Buell as agent for appellant. Pursuant to the language of the agreement, the lease term was commenced on the earlier of the first day appellant commenced business in the demised premises or one-hundred-twenty days after execution of the agreement, and continued for ten years from the date of commencement. The agreement was executed on June 26, 1986.
The record also contains a copy of the certification of tenancy rights which was filed with appellant's D-5 renewal application and which stated that appellant had tenancy rights in the permit location from January 1, 1989 to July 1, 1996. This certificate of tenancy was signed by J.T. Morrison and dated January 4, 1989.
The department argues that the Orioles, rather than appellant, had tenancy rights at the permit location beginning May 1, 1995. In support of this contention, the department relies solely on the certification of tenancy rights form filed with the Orioles' D-4 application. Initially, we note that the record does not contain any document evidencing a lease agreement between the Orioles and the property owner. The only lease agreement contained in the record is the aforementioned ten-year lease agreement between appellant and the property owner. Furthermore, the certification of tenancy rights form was signed by the property owner on February 24, 1995, and granted only prospective tenancy rights to the Orioles. At the time the Orioles filed the D-4 application, tenancy rights remained in appellant via the ten-year lease executed in June 1986. Watkins testified that appellant was to relinquish its tenancy of the premises to the Orioles on May 1, 1995 only if the department issued the D-4 permit. Because the D-4 permit was never issued, the Orioles never acquired tenancy. Tenancy thus remained in appellant both at the time appellant filed its renewal application and throughout the entire renewal process. Accordingly, we agree with appellant that the evidence of record does not support the department's first finding.
Appellant next contends that the department's second and third findings were also unsupported by the record. By these findings, the department essentially found that the Orioles were operating the permit premises as a private club and were utilizing appellant's D-5 liquor permit to engage in the unlawful retail sale of alcoholic beverages without the approval of the department.
The department cites the change in the outward appearance of the permit premises, the installation and use of the key card system, the Orioles' membership lists, flyers and paraphernalia discovered inside the premises, and the exclusive patronization of the permit premises by Orioles' members as evidence to support its finding that the Orioles, and not appellant, were operating the premises. Although there is little doubt that it may have appeared to the public and the police as if the premises were being operated as an Orioles club, such appearance does not establish ownership and/or operation. Liquor Control Agent Terry Williams testified that a D-5 permit holder is not required to hold its premises open to the public, but may hold the premises open only to members of a private club. Thus, the mere fact that only Orioles' members patronized the permit location does not, in and of itself, establish that the location was owned and operated by the Orioles.
The only other evidence offered by the department in support of its finding that the permit was operated by the Orioles were the two October 1995 invoices from Delmar Distributing listing the Orioles as "customer." However, appellant had no control over how Delmar Distributing wrote its invoices. Furthermore, there is no evidence in the record demonstrating that the Orioles paid for either of these deliveries.
By contrast, appellant provided numerous documents, including the lease, a food service operator's license, copies of checks showing payment by appellant to vendors, beer distributors, utility companies, CPAs, contractors, newspapers, the Treasurer of the state of Ohio, and the Department of Liquor Control, daily sales and cash reports, sales tax filings, and invoices evidencing that it was appellant, and not the Orioles, who actually owned and operated the permit premises.
The department's evidence does not support its findings that appellant was not the "owner or operator" of the business when it filed its renewal application or that appellant allowed the Orioles to carry on the business without the department's consent or approval. Although the evidence may have established that appellant permitted members of the Orioles to patronize the permit location while their D-4 application was being processed and that it may have appeared that the Orioles were in operation of the premises, the evidence established that it was appellant who operated all financial aspects of the business at the time appellant filed its renewal application.
Appellant also challenges the department's fourth finding, which states that appellant operated the permit premises in disregard for the laws, regulations, or local ordinances of the state. To the extent that the department argues that this finding is supported by evidence that appellant unlawfully allowed a non-permit holder to utilize its permit to operate its liquor establishment, we note that we have already determined that the evidence of record did not support such a finding.
The only other evidence that could possibly support this finding is the citation issued against appellant for possession of tip tickets and hindering or obstructing the investigation of the premises. Appellant was eventually found in violation by the commission and served only a five-day suspension of its liquor license. We find that one minor suspension in eight years of operation does not provide sufficient grounds for denying the renewal application.
Finally, appellant contends that the evidence of record does not support the department's fifth finding, that appellant misrepresented material facts on its 1996-1997 renewal application. We agree. The department first argues that appellant misrepresented a material fact when it indicated on the renewal application that no one other than appellant had any legal or beneficial interest in the permit business. The mere fact that the Orioles owned the furniture inside the premises does not establish that the Orioles had any legal or beneficial interest in the permit business. We have already determined that the evidence established that appellant owned, operated and profited from the permit business.
The department also contends that appellant misrepresented a material fact when it indicated on its renewal application that it currently rented the permit premises. Again, we note that we have already determined that the evidence established that tenancy was in appellant at the time appellant filed its renewal application.
For all the foregoing reasons, we find that none of the department's reasons for rejecting appellant's application for renewal of its D-5 liquor permit for permit year 1996-1997 were supported by reliable, probative and substantial evidence. Accordingly, we conclude that the record does not support the judgment of the common pleas court that the decision of the commission was supported by reliable, probative and substantial evidence and was in accordance with law.
Accordingly, appellant's sole assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed and remanded for proceedings in accordance with law and consistent with this opinion.
Judgment reversed; cause remanded.
BRYANT and KENNEDY, JJ., concur.
[1] A D-5 liquor permit allows the owner or operator of a night club to sell beer and any intoxicating liquor at retail, only by the individual drink in glass and from the container, for consumption on the premises where sold. R.C. 4303.18.
[2] A D-4 liquor permit is issued to a club which has been in existence for three years or more prior to the issuance of such permit to sell beer and any intoxicating liquor to its members only, in glass or container, for consumption on the premises where sold. R.C. 4303.17.