OPINION
Kamm's Korner Tavern, Inc.,[1] dba Kilbane's Restaurant Pub ("Kilbane's"), applied for a renewal of its class D-1, 2, 3 and 3A liquor permit for the 1998-1999 renewal year. On July 29, 1998, Cleveland City Council adopted a resolution, effective July 30, 1998, objecting to the renewal application. A hearing was held before the Ohio Department of Commerce, Division of Liquor Control ("division"). On April 30, 1999, the division rejected the renewal application based on R.C.4303.292(A)(2)(c) and (A)(1)(b). Kilbane's appealed the division's order to the Ohio Liquor Control Commission ("commission"). On February 1, 2000, the commission held a hearing. On February 11, 2000, the commission issued its order, affirming the rejection of the renewal application.
Kilbane's appealed the commission's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. On December 1, 2000, the common pleas court rendered its decision. The common pleas court determined, in part, that the commission's order was not supported by reliable, probative and substantial evidence. The commission (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 1. THE COMMON PLEAS COURT ABUSED ITS DISCRE-TION AND ERRED TO THE PREJUDICE OF THE LIQUOR CONTROL COMMISSION WHEN IT REVIEWED THE WEIGHT OF THE EVIDENCE AND SUBSTITUTED ITS JUDGMENT FOR THAT OF THE ADMINISTRATIVE AGENCY.
 2. THE COMMON PLEAS COURT ABUSED ITS DISCRE-TION AND COMMITTED REVERSIBLE ERROR WHEN IT INCORRECTLY INTERPRETED R.C. 4303.292(A)(2)(c) BY, IN ESSENCE, REQUIRING MORE EVIDENCE OF DIRECT WRONGDOING THAN THE STATUTE REQUIRES, THEREBY IMPOSING ADDITIONAL JUDICIALLY CREATED REQUIREMENTS.
As they are interrelated, appellant's assignments of error will be addressed together. In essence, appellant contends the common pleas court erred in determining that appellant's order was not supported by reliable, probative and substantial evidence. In reviewing the commission's order in an R.C. 119.12 appeal, a court of common pleas is required to affirm if the commission's order is supported by reliable, probative and substantial evidence and is in accordance with law. VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79, 81. Appellant asserts the common pleas court abused its discretion in substituting its judgment for that of the commission's.
The determination of whether an agency order is supported by reliable, probative and substantial evidence involves essentially a question of the absence or presence of the requisite quantum of evidence. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111. This determination inevitably involves a consideration of the evidence and to a limited extent would permit the substitution of judgment by the common pleas court. Id. In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative resolution of evidentiary conflicts; however, the findings of the agency are by no means conclusive. Id. An agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless the court determines that the agency's findings are internally inconsistent, impeached by the evidence of a prior inconsistent statement, rest on improper inferences or are otherwise unsupportable. VFW Post 8586 at 81.
The common pleas court may consider the credibility of competing witnesses as well as the weight and probative character of the evidence. Vesely v. Liquor Control Comm. (Mar. 29, 2001), Franklin App. No. 00AP-1016, unreported, citing Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, paragraph one of the syllabus. In Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571, the Supreme Court of Ohio set forth the definitions of "reliable," "probative," and "substantial" evidence. "Reliable" evidence is dependable; that is, it can be confidently trusted, "probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue, and "substantial" evidence is evidence with some weight; it must have importance and value. Id.
While it is incumbent on the common pleas court to examine the evidence, this is not the function of the court of appeals. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. This court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Id. Absent such an abuse of discretion, this court may not substitute its judgment for that of the agency or common pleas court. Id.
As indicated above, appellant's bases for rejecting the renewal application were pursuant to R.C. 4303.292.(A)(1)(b) and (A)(2)(c). Such provisions state:
 (A) The division of liquor control may refuse to * * * renew * * * any retail permit issued under this chapter if it finds:
(1) That the applicant * * *
* * *
 (b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state[.]
* * *
(2) That the place for which the permit is sought:
* * *
 (c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the * * * renewal * * * of the permit and operation thereunder by the applicant.
In Leo G. Keffalas, Inc. v. Ohio Liquor Control Comm. (1991),74 Ohio App.3d 650, this court addressed issues relating to the rejection of a renewal application based on R.C. 4303.292(A)(1)(b) and (A)(2)(c). We stated that it must be shown that the permit holder's actions caused the complained of environmental problems or demonstrated a disregard for laws, regulations or local ordinances. Id. at 653. See, also, Marwan, Inc. v. Ohio Liquor Control Comm. (1994), 93 Ohio App.3d 229, 238. However, the fact that the permit holder is not directly responsible for environmental problems complained of is not the issue. Rather, the focus under R.C. 4303.292(A)(2)(c) is the location of the permit business, not the person who operates the business. Maggiore v. Ohio Liquor Control Comm. (March 29, 1996), Franklin App. No. 95APE06-713, unreported. See, also, Davis v. Liquor Control Comm. (June 8, 1995), 94APE12-1779, unreported.
Indeed, the causation important to non-renewal on environmental bases is that which is sufficient to establish a connection between the permit premises and environmental difficulties. Abuzahrieh Co., Inc. v. Liquor Control Comm. (July 22, 1999), Cuyahoga App. No. 74556, unreported, discretionary appeals not allowed in (1999), 87 Ohio St.3d 1453. For example, in Leo G. Keffalas, Inc., this court upheld the rejection of a permit renewal application, despite the owners' cooperation with police and lack of evidence of wrongdoing on the owners' part, where the location of the bar in a high-crime area was a contributing factor to continuous drug activity. Id. at 654-655.
In the case at bar, the common pleas court concluded, in part, that Kilbane's had not caused any adverse environmental problems in the neighborhood and noted there was no testimony concerning the effect of the business on the neighborhood. (Common pleas court decision at 10, 12.) Appellant contends the common pleas court erroneously required a causative connection between the permit holder and drug transactions on the premises, that there was evidence to connect employees of the bar with drug transactions on the premises, and that the common pleas court improperly believed the permit holder's theory that Cleveland City Council objected to the renewal in order to be able to buy the property at issue. For the reasons that follow, we find that the common pleas court did not abuse its discretion in determining that appellant's order was not supported by reliable, probative and substantial evidence.
The evidence before appellant was as follows. Kilbane's is located at 16800 Lorain Avenue in Cleveland on one of the "main drags." (Tr. 9.) The premises is located in the area known as "Kamm's Corners," an old commercial district created in the mid to late 1800s. Id. at 10. The area has storefronts with slant-in parking. Id. Next door to Kilbane's is a "greasy spoon" restaurant. Id. at 11. Also located nearby is a chiropractic office, a Goodwill Store, a cigar shop, a Key Bank, a Middle Eastern bakery, another bar, two insurance agencies, a Chinese restaurant and a gym. Id. at 11-12.
At the time of the hearing, Michael A. Dolan was the Cleveland city councilman for the ward where Kilbane's was located. Councilman Dolan stated that the area around Kamm's Corners was "blighted." Id. at 11. Councilman Dolan testified that a business revitalization district was created for the area with the purpose of working with property owners to revitalize and rehabilitate the properties along Lorain Avenue. Id.
Shortly after taking office in December 1996, Councilman Dolan received several complaints which alleged drug activities were taking place at Kilbane's. Id. at 9, 13. As a result, Councilman Dolan asked the public safety director to conduct an investigation. Id. at 13. Sergeant Timothy Gaertner of the Cleveland Police Department testified that he received numerous complaints of drug sales and underage drinking taking place at Kilbane's. Id. at 71. In late 1997, Sergeant Gaertner assigned detectives to investigate. Id.
Gail Bindel, a detective with the Cleveland Police Department, performed surveillance of Kilbane's with another detective, which led up to a search warrant being issued. Id. at 57-58. The surveillance began four to six weeks before the search warrant was issued, and Detective Bindel stated that she was in the bar approximately eight to nine times. Id. at 65. As a result of the surveillance, a female bartender became a suspect. Id. at 60. Detective Bindel found a crack pipe hidden in the women's restroom, and one time after the bartender and a patron had been in the restroom, the crack pipe was warm. Id. at 59.
The police had an informant, and the female bartender called a dealer to meet the informant at Kilbane's. Id. at 80. The dealer, a Hispanic male, came to Kilbane's and delivered drugs to the informant. Id. As a result of this controlled buy, a search warrant was issued for Kilbane's. On March 10, 1998, the Hispanic male was called back to Kilbane's and when he arrived, the search warrant was executed. The Hispanic male was arrested, along with two female bartenders. The Hispanic male had "quite a large amount" of crack cocaine on him. Id. at 62. Crack cocaine was also found behind the bar. Id. The Hispanic male pled guilty to a fourth degree felony, and the female bartenders were re-indicted and pled out. Id. at 76.
Thomas J. Kilbane, the owner of Kilbane's, testified that he fired the bartenders as a result of the March 10, 1998 incident. Id. at 102, 105. Detective Bindel testified that during her surveillance, she saw Mr. Kilbane twice and does not recall drugs being sold in the bar on those occasions. Id. at 69-70. Mr. Kilbane testified that he never saw the Hispanic male in the bar prior to that night. Id. at 101. Sergeant Gaertner testified that the Hispanic male would not have been in the bar had the police informant not called him to the bar. Id. at 84. After the March 10, 1998 raid, Councilman Dolan told Mr. Kilbane that he was going to object to a liquor permit renewal. Id. at 48. Councilman Dolan also testified that he objected to the renewal based on constituent complaints. Id. at 12.
Mr. Kilbane testified that he had a liquor permit for Kilbane's for ten years and had had no liquor citations. Id. at 88. From police reports admitted at the hearing, it appears that from January 1998 to January 27, 2000, there were eighteen reported incidents at or near Kilbane's. In addition to the March 10, 1998 raid, the reports included incidents involving assaults, disorderly conduct, resisting arrest and theft. No one testified about the police reports that were admitted.
Councilman Dolan testified that the neighborhood in question is a middle-class, residential neighborhood. Id. at 36. He stated that his ward does not have a drug problem. Id. at 47. There are approximately four other bars within 500 feet of Kilbane's. Id. at 55. He stated that there were essentially no problems with the other bars in the area and that Kilbane's has "* * * really been the only establishment [where] there's been allegations of drug activity * * *." Id. at 46, 51. He has observed patrons of Kilbane's urinating on the side and front of the building and has seen patrons smoking marijuana by a dumpster near the building. Id. at 14, 24. At the time of the hearing, Councilman Dolan had received at least twenty-five complaints about Kilbane's in the thirty-six months he had been in office. Id. at 45-46, 53-54.
Councilman Dolan stated that his constituents do not want to live around drugs, and he did not want flight from the neighborhood. Id. at 47. He answered in the affirmative when asked if renewing the permit would substantially interfere with the peace, good order, and sobriety of the community. Id. at 16. He indicated that it was the "conduct of the business at the premises" that has negatively affected the surrounding community, specifically, the March 10, 1998 incident. Id. at 16-17. He testified that his goal was to rejuvenate the business district. Id. at 15.
Councilman Dolan testified that each ward in Cleveland has at least one local development corporation ("LDC") for urban renewal and rehabilitation. Id. at 27. Councilman Dolan's LDC focuses on commercial revitalization, mainly through the Storefront program. Id. at 27-28. Councilman Dolan is not officially on the board of the LDC, and he has no personal financial interest in the LDC. Id. at 28, 36-37. He funds the LDC through his community development bloc grants. Id. at 28. In addition, at some point the city of Cleveland overpaid into the workers' compensation fund, and it received ten million dollars as a result. Id. at 26. This money was divided between the wards. Id.
Councilman Dolan stated that the majority of property owners along the strip in question have been involved in the Storefront program. Id. at 15. He testified that his LDC and his predecessor had attempted to work with Kilbane's, with no success. Id. at 16. He indicated that he had hoped Kilbane's would have participated in the program but that the "building is still in a rundown state" and was "still blighted, in my opinion." Id. At the time of the hearing, the building in question was in conformity with all building codes. Id. at 18. Mr. Kilbane testified that he tried to participate in the Storefront program, but it did not work out. Id. at 88-89.
On July 26, 1999, Councilman Dolan sent a letter to Mr. Kilbane offering him $130,000 for the building and the liquor license or $110,000 for the building without the liquor license. Councilman Dolan testified that he was attempting to purchase the building with his ward's share of the money from the workers' compensation overpayment. Id. at 29. He stated that he wanted his LDC to buy it so that it could possibly be redeveloped to make the area better. Id. at 35. On September 16, 1999, Councilman Dolan made a final offer of $140,000 for the building and the liquor license, which Councilman Dolan noted was currently under suspension. These offers were rejected by Mr. Kilbane.
On January 21, 2000, Mr. Kilbane wrote to Councilman Dolan, stating that he had another prospective buyer and that Councilman Dolan had told this buyer there was no liquor license and that the building was going to be taken by eminent domain. At the hearing, Councilman Dolan was asked to read a portion of this letter, which stated:
 I called and spoke to you about the sale of the business. You assured me the liquor license was going to be denied, you would take the building by eminent domain and had in fact already spoken to the proper people/department to start the proceedings. You also assured me it would be far cheaper to sell the building to you and save the legal expense. If I sold it to you, you would withdraw your objection to the liquor license renewal. [Ex. 3; Tr. at 32.]
Councilman Dolan did not deny the contents of this letter.
The common pleas court did not abuse its discretion in determining appellant's order rejecting Kilbane's renewal application was not supported by reliable, probative and substantial evidence. In regard to R.C. 4303.292(A)(1)(b), the common pleas court did not abuse its discretion in finding insufficient evidence to support a finding that Mr. Kilbane operated his business in a manner that demonstrated a disregard for laws, regulations or local ordinances. The March 10, 1998 raid was certainly an undesirable, isolated occurrence, even though the evidence shows that at least one of Kilbane's employees was involved in drug activities on the premises. However, there is no evidence that Mr. Kilbane was involved in or was aware of such activities, and the employees arrested that night were terminated. There was no evidence that Mr. Kilbane permitted or ignored drug use in and around his premises.[2]
No liquor control citations had been issued to Kilbane's in the ten years it had a permit. Councilman Dolan testified that there were no drug problems in the area except for Kilbane's. However, there was little specific evidence concerning this allegation. In the context of all the evidence, we cannot find an abuse of discretion in determining there was insufficient evidence to support this basis for rejecting the renewal application.
In addition, there was no abuse of discretion in concluding there was insufficient evidence to support a finding under R.C. 4303.292(A)(2)(c). Unlike R.C. 4303.292(A)(1)(b), the fact that the owner may not be responsible for any problems in the area is not the issue. Rather, as indicated above, it is the location of the permit premises that is relevant. The common pleas court erred to the extent it stated otherwise; however, such error was harmless as the evidence supports the common pleas court's findings nonetheless.
As discussed, the area around Kilbane's is a middle-class neighborhood. Kilbane's, however, is located on a main drag, in a commercial area. The March 10, 1998 raid was unfortunate and, no doubt, undesirable. In addition, Councilman Dolan had seen patrons of Kilbane's smoking marijuana outside the bar. Approximately eighteen incidents (including the March 10, 1998 raid) had occurred at or near Kilbane's in a two-year period, only two of which were drug-related incidents. Most of the incidents involved assaults. However, such evidence does not automatically result in a finding that the business is so located such that substantial interference with public decency, sobriety, peace, or good order would result from the renewal of the permit and operation thereunder.
Councilman Dolan himself stated that there was no drug problem in his neighborhood. He did testify that Kilbane's was really the only establishment about which drug allegations had been made. However, he also stated that he receives complaints about a "fight here, * * * a fight there" and that such goes with the bar business. (Tr. 46.) Councilman Dolan testified that his biggest fear was that if there was a drug problem in the neighborhood, there would be flight out of the neighborhood. Id. at 47. He indicated that the March 10, 1998 raid constituted conduct that has negatively affected the community. Id. at 16-17.
There is no doubt that drug activity has occurred at and near the establishment. However, the evidence does not indicate that such activity was substantial, pervasive or has gotten or will get worse. The councilman's fears and the relatively isolated incidents, though present, are not enough to render the common pleas court's decision an abuse of discretion in finding no violation under R.C. 4303.292.(A)(2)(c) in the context of all the evidence. Such provision requires a showing of substantial interference with public decency, sobriety, peace, or good order.We can appreciate the decision reached by the commission given the evidence of drug activity at or near the premises. However, the common pleas court took into consideration the totality of the evidence. As discussed above, the common pleas court may properly weigh the evidence and make credibility determinations. The common pleas court's conclusions with regard to all of the evidence, including that pertaining to purchase offers, were within its discretion. Our review of the trial court's decision is very limited, and we cannot find an abuse of discretion.
Given all of the above, the common pleas court did not abuse its discretion in concluding that appellant's order rejecting Kilbane's renewal application pursuant to R.C. 4303.292(A)(1)(b) and (A)(2)(c) was not supported by reliable, probative and substantial evidence. Accordingly, appellant's assignments of error are overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
 ______________ TYACK, J.
BRYANT, P.J., and BROWN, J., concur.
[1] The briefs refer to the party as "Kamm's Korner Tavern, Inc.," while elsewhere in the record the party is referred to as "Kamm's Corner Tavern."
[2] We note that a permit holder's mere denial of knowledge of drug activities on or near the permit premises does not automatically exculpate him or her under R.C. 4303.292(A)(1)(b). Rather, the division may refuse to renew the permit if it finds that the applicant has operated the business in a manner that demonstrates a disregard for the law, which may include inferences based on all the evidence and credibility determinations.