DECISION
This is an appeal by appellant, the Ohio Liquor Commission ("commission"), from a judgment of the Franklin County Court of Common Pleas, reversing an order of the commission denying the renewal of a liquor permit.
On June 16, 1998, the Ohio Department of Commerce, Division of Liquor Control ("division"), issued an order to appellee, Double Duce, Inc., d.b.a. Legends, indicating that the division had rejected the permit holder's 1998-1999 renewal application for a D-5 permit. The division cited the following grounds in support of denying renewal:
 Double Duce, Inc. has been convicted of crimes that relate to the permit holder's fitness to own and operate the captioned liquor establishment in this state. R.C. 4303.292(A)(1)(a), R.C. 4303.18, R.C. 4303.182, and R.C. 4303.27.
 John Petanceski, president and fifty percent shareholder of Double Duce, Inc., has been convicted of a crime that relates to his fitness to be involved in the ownership and operation of the captioned liquor establishment in this state. R.C. 4303.292(A)(1)(a), R.C. 4303.18, R.C. 4303.182, and R.C. 4303.27.
 The permit holder has operated the liquor permit business in a manner that demonstrates a disregard for the laws, regulations or local ordinances of this state. R.C. 4303.292(A)(1)(b).
 The place for which the permit is sought is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace or good order would result from the renewal of the permit and operation thereunder by the applicant. R.C. 4303.292(A)(2)(c).
* * *
 The Division also denies and rejects the 1998-1999 renewal application for good cause. R.C. 4303.271(A), R.C. 4301.10(A)(2) and O.A.C. 4301:1-1-12(B).
Appellee filed an appeal with the commission, and the matter came for hearing before the commission on February 4, 1999. At the hearing, the following individuals testified against renewal of the liquor permit: Elizabeth S. Welsh, President of the Newark and Licking County Chamber of Commerce; Wilma Lapore, Director of the Newark Public Library; Charles E. Strauch, Executive Director of the Licking Knox Industries, Inc.; Sue Bixler, the Tax Administrator for the city of Newark; Charles T. Snedeker, Pastor of the Old Country Church; Newark City Police Captain Paul Cochran; Ken Hinkle, Supervisor of the Newark Police Department's Detective Bureau; Keith Bryant, an employee with the Licking County Common Pleas Court Adult Probation Department; Newark Police Detective Steven Baum; Newark Police Sergeant Barry Connell; and Newark Police Officer Scott Snow. John Petancevski, the permit holder, was the sole witness on behalf of appellee.
Following the hearing, the commission affirmed the order of the division by order mailed February 10, 1999. Upon appeal to the trial court, the court reversed the order of the commission, holding that the order was not supported by reliable, probative and substantial evidence.
The commission, on appeal from the judgment of the trial court, sets forth the following seven assignments of error for review:
FIRST ASSIGNMENT OF ERROR
 The Lower Court Erred And Committed Reversible Error When it Incorrectly Interpreted R.C. 119.12 And the Court's Role Thereunder By Substituting Its Judgment For The Judgment Of The Ohio Liquor Control Commission.
 SECOND ASSIGNMENT OF ERROR The Lower Court Erred And Committed Reversible Error When It Incorrectly Interpreted R.C. 4303.292(A)(2)(c) By, In Essence, Requiring More Evidence Of Direct Wrongdoing Than The Statute Requires, Thereby Imposing Additional Judicially Created Requirements.
 THIRD ASSIGNMENT OF ERROR The Lower Court Erred And Committed Reversible Error When It Incorrectly Interpreted R.C. 4303.292(A)(1)(b) By, In Essence, Requiring More Evidence Of Direct Wrongdoing Than The Statute Requires, Thereby Imposing Additional Judicially Created Requirements.
 FOURTH ASSIGNMENT OF ERROR The Lower Court Erred And Committed Reversible Error When It Incorrectly Interpreted R.C. 4303.271 By, In Essence, Requiring More Or Better Evidence To Deny A Liquor Permit For Good Cause, Thereby Imposing Additional Judicially Created Requirements.
 FIFTH ASSIGNMENT OF ERROR The Lower Court Erred And Committed Reversible Error When It Judged The Credibility Of Witnesses, Weighed The Evidence And Substituted Its Judgment For The Judgment Of The Ohio Liquor Control Commission.
 SIXTH ASSIGNMENT OF ERROR The Lower Court Abused Its Discretion When It Reversed The Decision Of The Ohio Liquor Control Commission.
 SEVENTH ASSIGNMENT OF ERROR The Decision Of The Commission Was Supported By Reliable, Probative And Substantial Evidence and Was In Accordance With Law.
In considering an administrative appeal under R.C.119.12, the trial court reviews the agency's order to determine whether it is supported by reliable, probative and substantial evidence and is in accordance with law. Dr. Dan, Inc. v. LiquorControl Comm. (Nov. 17, 1998), Franklin App. No. 98AP-243, unreported. In performing its review, "the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111. Thus, "an agency's factual findings should not be disturbed by the common pleas court absent legally significant reasons for doing so." Dr. Dan, supra. Further, "[i]n reviewing the common pleas court's determination that the agency's order is or is not supported by reliable, probative and substantial evidence, the appellate court's role is, in part, limited to determining whether the common pleas court abused its discretion." Id.
The commission's assignments of error are interrelated and will be considered together. In general, appellant contends that the trial court erred in its interpretation of R.C.4303.292(A)(1)(b) and 4303.292(A)(2)(c), and that the court ignored evidence in support of the division's rejection of renewal for good cause.
In Equus, Inc. v. Liquor Control Comm. (June 15, 1999), Franklin App. No. 98AP-892, unreported, this court noted that:
 A liquor license is neither a property nor a contract right, but mere permission to engage in the liquor business. The Stouffer Corp. v. Bd. of Liquor Control
(1956), 165 Ohio St. 96, 99 * * *. A person acquiring a liquor permit under R.C. Chapter 4303 does not retain the permit indefinitely but must file an application for renewal annually. R.C. 4303.27. Pursuant to R.C. 4303.271, a permit holder is entitled to renewal of its liquor permit unless the department rejects the renewal application for good cause. Buckeye Bar v. Liquor Control Comm. (1972), 32 Ohio App.2d 89, 90 * * *. The department has the burden of proving, by a preponderance of the evidence, that good cause exists for rejecting a renewal application. Id. If any one of the grounds cited by the department for rejecting a renewal application is supported by reliable, probative and substantial evidence, the commission's decision must be upheld. * * * [Citations omitted.]
R.C. 4303.292 sets forth the grounds under which the division may refuse the renewal of permits, and states in pertinent part:
 (A) The division of liquor control may refuse to issue, transfer the ownership of, or renew, and shall refuse to transfer the location of any retail permit issued under this chapter if it finds:
That the applicant * * *
* * *
 (b) Has operated liquor permit businesses in a manner that demonstrates a disregard for the laws, regulations, or local ordinances of this state or any other state;
* * *
(2) That the place for which the permit is sought:
* * *
 (c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation thereunder by the applicant.
The commission contends that the trial court erred in its interpretation of R.C. 4303.292 by imposing a causation requirement between the permit holder's actions and the adverse environmental conditions of the neighborhood. In its decision reversing the order of the commission, the trial court held in pertinent part:
 * * * From the record, the Court finds that the Commission did not properly find that Appellant's permit premises are a detriment to public decency, sobriety, peace, and good order. * * * The record taken as a whole is replete with speculation, conjecture, and flawed reasoning. The witnesses in support of the municipality's position acknowledge that other bars, some now closed, and a local housing project all contributed to the area's problems with urban blight.
 Appellant's counsel accurately points out that statistics, especially crime statistics, can be misleading. The issue here is not one of the blanket acceptance or rejection of those statistics. Instead, any use of statistics is subject to weighting the evidence and considerations of shades of gray. There can be different inferences from the same numbers, and questions for the fact finder to evaluate. In this case, the Commission drew improper inferences from the raw data. * * *
 Here, the Commission engaged in a form of guilt by association in its review of the statistics presented. Appellant was branded because of the transgressions of other permit holders and other demographic factors, such as low income housing in the area. The statistics presented can be discredited as unreliable for not being so specific as to Appellant's role, if any, in local problems with public order and decency.
The record of the hearing before the commission indicates that the Legends Nite Club ("Legends") is located in downtown Newark, in an area undergoing economic revitalization. There was evidence that a new library is being built within three hundred feet or less of the permit holder. A senior high-rise apartment building, as well as a YWCA and an elementary school are also located nearby. Elizabeth Welsh, the President of the Newark and Licking County Chamber of Commerce, testified that her organization has received complaints from the public regarding fights in the bar's parking lot; citizens have also expressed concerns about the establishment operating in the vicinity of school children.
Charles Strauch, the Executive Director of the Licking Goodwill Industries, testified that the Goodwill Industries store is located near the bar. Strauch testified that there have been occasions, during the evening hours, when bar patrons have parked in front of the store's gated lot, preventing drivers for Goodwill Industries from entering the driveway into the facility. He also testified that bar patrons from Legends had taunted employees of Goodwill Industries. Pastor Snedeker, whose church is located approximately one and one-half block from the permit holder, testified concerning broken beer bottles and the smell of urine in the area of the bar.
Captain Cochran of the Newark Police Department is the custodian of records for the police department. At the hearing, Officer Cochran identified the state's Exhibit No. 11 as a computer generated printout of service calls to 177 West Main Street, Newark, the location of Legends. The records span the time period from April 1996 through January 29, 1999. Officer Cochran testified that, over that period of time, there were a total of four hundred seven calls. The calls included "bar checks," in which patrol officers go through the bar looking for individuals who might be causing problems or who might have outstanding warrants. The printout of service calls indicates that numerous calls were made reporting fights in progress.
The state's Exhibit No. 12 contained "offense reports" generated from 177 West Main Street. These reports include "[a]ssaults, having weapons while intoxicated, some OMVIs * * * some felonious assaults, some disorderly conducts, * * * resisting arrest, assault on police officers." (Tr. 101.) Officer Cochran identified the state's Exhibit No. 13 as a list of incident reports and convictions resulting from arrests at the bar. Officer Cochran testified that there was "an inordinate amount of time spent by our officers at Legends." (Tr. 116.)
Ken Hinkle, the Supervisor of the Detective Bureau for the Newark Police Department, testified that he was formerly assigned to the second shift patrol division, and that the permit holder's bar generated the most trouble in the city. Hinkle testified that he was assaulted once while attempting to detain a patron that had just exited the bar. The patron was subsequently convicted of felonious assault. Hinkle related that, on several occasions, he threatened to arrest several employees of the permit holder because of the manner in which they handled removal of patrons. He stated that officers would frequently go into the establishment to arrest individuals with outstanding warrants. Keith Bryant, an employee of the Licking County Common Pleas Court Adult Probation Department, testified that he has been to Legends to check for individuals on felony probation, and that he has found probationers at the bar.
Newark Police Detective Steven Baum testified that he has conducted more than one hundred bar checks at Legends, and he has also made numerous service calls to the bar. Detective Baum testified that fights would begin in the bar and that bouncers "would throw them out the door." (Tr. 159.) He further stated, "[w]e spoke to the bouncers several times about this. The fight would then continue in the parking lot. And it was there for us to deal with after that." (Tr. 159-160.) On cross-examination, Detective Baum acknowledged that service calls to the area had decreased since a number of other bars had closed.
Newark Police Officer Barry Connell testified that an individual assaulted him approximately thirty to thirty-five feet from the front of the bar. The officer first encountered the man near the fence area of the entrance to the bar's parking lot. Officer Connell was informed that, prior to the time he arrived at the scene, the man had been involved in several altercations inside the bar.
Officer Connell related another incident in which an individual was in the parking lot with a knife. The officer testified that, when he first arrived at the scene, "it was absolute mayhem in the parking lot." (Tr. 169.) A trooper "had his weapon drawn, * * * covering a subject that was spread out on the ground. There was blood everywhere." (Tr. 169.) The individual with the knife had assaulted another person, nearly cutting off the victim's hand. Officer Connell stated that it was his understanding that the altercation began inside the bar.
Newark Police Officer Scott Snow testified that he believed that there had been more calls to Legends "than any other bars in the city." (Tr. 176.) Officer Snow related an incident in which a criminal defendant got into an altercation with another individual inside the bar. The bar bouncers escorted the two men outside where the altercation continued. During the incident, three individuals "beat up" the victim, breaking his jaw. (Tr. 178.) The defendant entered a guilty plea to aggravated assault.
On September 11, 1996, an individual left the Legends bar and was murdered within thirty feet of the bar. According to Officer Snow, the defendant had been drinking in the bar that evening.
John Petancevski, the President of Double Duce, Inc., testified that he had looked into hiring security for the bar but that the expense would be prohibitive. He stated that, when fights occur, his policy is for the participants to be removed from the bar. He testified that, "[b]asically, there's usually about three squad cars in my parking lot on any given night all night long without my asking them to be there." (Tr. 201.)
It has been held that "environmental conditions alone, if extreme enough, can constitute good cause to deny renewal of a permit." Davis v. Liquor Control Comm. (June 8, 1995), Franklin App. No. 94APE12-1779, unreported, citing In re Appeal ofMendlowitz (1967), 9 Ohio App.2d 83, 88. Further, "in interpreting R.C. 4303.292(A)(2), location, and not the permit holder's action or inaction, is the controlling factor." WJL Jr.,Inc. v. Liquor Control Comm. (July 30, 1992), Cuyahoga App. No. 60868, unreported. Thus, "Ohio courts have not hesitated to uphold the Liquor Commission's decision to refuse to renew a liquor permit based on environmental factors through no fault of the permit holder." Id.
Upon review, we find, contrary to the trial court, that there was substantial evidence that patrons entering or leaving the bar engaged in conduct that interfered with the public decency, sobriety, peace and good order of the neighborhood. While there may have been evidence that other bars contributed to the area's problems, there was ample testimony that the sale of liquor at Legends adversely affected the surrounding area and burdened police resources, and we agree with the commission's contention that the trial court's decision simply ignores much of the evidence presented. Thus, we conclude that there was reliable, probative and substantial evidence to establish good cause to reject renewal of the liquor permit under R.C.4303.292(A)(2)(c) because of the adverse impact in environmental conditions pertaining to public decency, sobriety, peace and good order. Accordingly, we conclude that the trial court abused its discretion in reversing the order of the commission.
Because there was good cause to support denial of the application for renewal under R.C. 4303.292(A)(2)(c), we need not address the issue whether the trial court erred in its interpretation of R.C. 4303.292(A)(1)(b). Based upon the foregoing, the commission's first, second, fourth, fifth, sixth and seventh assignments of error are sustained, while the third assignment of error is rendered moot. Accordingly, the judgment of the trial court is reversed, and this matter is remanded to the trial court with instructions to reinstate the order of the division, as affirmed by the commission, denying renewal of the permit.